SMITH & ZIMMER COMPANY v. M. J. JACOBSON and Another.[1]

February 9, 1906.

Nos. 14,649—(180).

**Compensation of Trustee.**

    A trustee, whose unexplained failure to collect rents from trust property and apply them and other trust funds actually collected by him on

[1] Reported in 107 N. W. 166.
    97 M.—18

a note executed by his cestui que trust resulted in its nonpayment at maturity, cannot recover charges against the maker of that note to which under a contract that trustee became entitled on the nonpayment of such note.

Action in the district court for Traverse county, by Smith & Zimmer Company, a corporation, to foreclose a real estate mortgage.

The facts were as follows: On January 9, 1901, defendant Jacobson being indebted to numerous creditors in a large amount, including a debt to the firm of Smith & Zimmer of $8,500, entered into a first contract with the latter, whereby they took an assignment and possession of all of Jacobson's property. By the terms of this contract Smith & Zimmer agreed to collect money due on the collaterals and apply the proceeds upon the general indebtedness; and it was therein provided that:

> When all such indebtedness is fully paid Smith & Zimmer are to return all such collateral remaining in their hands to said Jacobson, less a fair compensation for their risk, trouble and services and less all expenses, which they may have incurred in that behalf.

At the same time Jacobson and his wife executed and delivered to Smith & Zimmer a mortgage to secure the indebtedness then due, and such further advances as they might make under the contract. On February 12, 1903, a second contract was made between Jacobson and Smith & Zimmer in which another creditor, the Hennepin Lumber Company, joined. In this contract the balance due Smith & Zimmer was stated to be $5,144.50, of which Jacobson thereupon paid $3,408.30 in cash, and as collateral security for the balance he agreed to execute and did execute and deliver to Smith & Zimmer his two notes for $1,000 each, due in six months and one year after date, respectively. The contract contained the following provisions:

> Upon payment of said indebtedness in full the said notes, together with all notes, accounts, mortgages, securities and property of every description now held by Smith & Zimmer * * * as security * * * shall when said * * * indebtedness is paid, be returned without charge to said Jacobson. * * * It is also agreed that unless said Jacobson

shall pay the notes given this date at the time when they shall become due then and in that case the parties shall be governed as to the question of charges for their handling and collection of paper and accounts turned over as collateral by said Jacobson, securing his indebtedness, * * * by the terms of a contract heretofore made between the parties with respect thereto.

Thereafter Smith & Zimmer incorporated under the same name and took over the partnership assets, including the Jacobson contracts and securities. Jacobson paid his first $1,000 note at maturity. The second note was indorsed by the payees to Ties, Smith & Co., who presented it when due at the place of payment. Jacobson appeared and tendered in payment thereof $780 in cash and credits claimed against Smith & Zimmer for $96.69 and $240, the latter being the amount of rents assigned by Jacobson to Smith & Zimmer, which they had or should have collected from the Hennepin Lumber Company. Defendant's tender was refused. Plaintiff thereupon brought this action to foreclose the mortgage for default in the conditions thereof, claiming thereunder $4,000 for services rendered and $1,164.48 for moneys advanced pursuant to the terms of the first contract.

The case was tried before Flaherty, J., who made findings of fact substantially as above, and as conclusions of law found that plaintiff was entitled to recover from defendant $1,081.98 upon the note alone, and nothing for services, and to judgment for the foreclosure of the mortgage and sale of the premises covered thereby to satisfy the amount found due. From an order denying a motion for a new trial, plaintiff appealed. Affirmed.

*Henry J. Fletcher,* for appellant.

*Thomas Kneeland,* for respondents.

JAGGARD, J.

The preliminary question in this case is not whether the defendant failed to pay the note, for it is admitted that he did not, but whether the plaintiff is entitled under the second contract to recover charges for services rendered because of such failure. It may be conceded, for the purpose of determining this preliminary question, that plaintiff

and appellant is correct in its contentions; that if the partnership, Smith & Zimmer, had any rights growing out of the failure of Jacobson, the defendant and respondent, to pay the notes at maturity, the plaintiff corporation succeeded to those rights; and that when the plaintiff, on the nonpayment of the last note, "took up" that note, it did so in performance of the agreement to discharge all the debts of Jacobson. The rights of the plaintiff were exactly the same and were subject to exactly the same defenses as the firm of Smith & Zimmer would have had and have been subject to if the plaintiff corporation had never been organized and if the note had never been sold to Ties, Smith & Co. Accordingly the plaintiff will hereafter be referred to as if the partners had brought this suit. Jacobson attempted to make a full and complete tender of the last note under the second contract. Of this sum $780 was in cash, and $96.69 the court found—and there is no sufficient reason for disturbing its finding—had been paid on Jacobson's account to Smith & Zimmer on two collections from collaterals. There can be no objection to treating these two accounts as credits on Jacobson's note, so far as excuse to plaintiff for its nonpayment is concerned.

With respect to the remaining sum necessary to have been tendered or paid to prevent the happening of the contingency upon which Jacobson became subject to liability for charges for collection and the like, here in controversy, the following facts are to be considered: On January 7, 1901, Jacobson leased some real estate for three years to the Hennepin Lumber Company, at the rate of $20 per month, payable on or before the last day of each month, by the usual writing which contained the ordinary covenants. It was thereby expressly agreed that the rent should be paid by the Hennepin Lumber Company to Smith & Zimmer to the credit of Jacobson, to be applied by them in reduction of his indebtedness. The first contract was dated January 9, 1901, and the second contract February 12, 1903. The Hennepin Lumber Company was a party to that second agreement, which provided for an extension of this very lease until January 1, 1905, at the option of that company. Rentals were collected by Smith & Zimmer under this lease and appear to have been credited to Jacobson up to the time of the second contract, although it is not clear upon the record whether the month of January, 1903,

had been so credited or not. When Jacobson made his tender he insisted that he should be credited with the sum of $240 on account of the rentals from the time of the agreement to the time when the second note fell due, to wit, January 1, 1904. Smith testified expressly that Smith & Zimmer as a matter of fact never collected and the lumber company never paid them any portion of these rents.

The circumstances suggest considerable doubt whether the plaintiff has shown such affirmative good faith as is the invariable condition precedent to equitable relief. Jacobson's default complained of is based on the default of the lumber company, for whose benefit the transactions were conducted and the interests of the firm apparently sacrificed, of which company it is admitted Smith & Zimmer were officers and stockholders, for which that firm collected money and employed a common collector, for which Smith himself signed the very agreement on its behalf under which recovery is now sought, and for which, as president, he failed to pay rent to himself as president of the plaintiff company. This identity of Smith & Zimmer and of the lumber company when commercial advantage resulted, and separation of entities when disadvantage would follow, does not appeal strongly to a chancellor's conscience. However it is not here necessary to determine the effect in equity of this convenient, but suggestive, duality of capacities. Under the agreement with Jacobson, to the last of which the lessee was a party, construed in connection with the express provisions of the lease itself, there can be no doubt as to the legal right and duty of Smith & Zimmer to proceed in court against the Hennepin Lumber Company upon breach of the lease by nonpayment of rent. The record contains no explanation whatever for the failure of Smith & Zimmer, for at least eleven and possibly twelve months (it is not very material which), to collect payment from a presumptively solvent corporation, to secure a judgment against it, or to re-enter upon the premises.

The record shows that no notice was given to Jacobson of the failure to credit on the note the sums collected from collaterals or under the lease. No rule of law or equity required him to suspect that his trustees had failed in performance of their duty to make collections and to apply proceeds. He was acting in good faith. His default, if any, so far as the plaintiffs are concerned, was technical. The default of the plaintiffs was substantial. They did not bear the burden resting

upon them to affirmatively show themselves entitled to equitable relief. On the contrary, it appeared that if they had applied upon the note held by their indorsee at its maturity the sums paid them from defendant's collaterals, together with the amount of rentals they might have collected, Jacobson's tender of cash would have taken care of the balance due on that note. A court of equity will not permit them to use its processes for the purpose of imposing on him a liability based only upon the default on his part to pay a sum unpaid because of the unexplained default on their part as trustees; that is to say, they will not be permitted to profit by their own failure of duty.

The decision of this preliminary question renders it unnecessary to refer to other issues of law and fact involved, beyond indicating that, if the plaintiff's case had not failed in that regard, the later question must have been so resolved as to prevent the enforcement of the liability here in controversy.

Order affirmed.